## 45801. MILLER v. INSURANCE COMPANY OF NORTH AMERICA.

JORDAN, Presiding Judge. The plaintiff claimed $5,000 as the beneficiary of an alleged contract of life insurance covering her husband, who died August 26, 1969. She appeals from a judgment for the defendant. *Held:*

We affirm. The stipulated facts fail to disclose the existence of a contract of insurance covering the life of the applicant's spouse.

In July, 1969, the plaintiff, Mrs. Miller, submitted a signed application for $20,000 coverage on herself, $5,000 on her husband, and $1,000 on a minor child, including thereon in respect to her husband's medical history "Acute myocardial infarction, Diabetes mellitus June 1969" and the statement, "I understand that the life Insurance Company of North America will incur no liabilty until this application is accepted by them while the conditions affecting insurability are as described above and the first premium is paid in full." Below her signature in bold-face print is the following: "Send no money—Invoice will be mailed with certificate."

Mrs. Miller, then age 44, had acted in response to a mail solicitation from the Joseph K. Dennis Company, Inc., as administrator of an insurance plan available to members of the medical profession and their employees, with a charter enrollment period to July 31, 1969. The application form she used is identical to the form included in the solicitation material. The solicitation described a "Special Guarantee Coverage Provision" as follows: "If you have ever been previously refused Life Insurance Protection due to past medical history or are uninsurable because of physical impairments, this Guaranteed Coverage Provision applies to you. Applicants with below standard medical health records under age 60 *will be issued* the amount they apply for up to $20,000 (see enclosed brochure for details)." The brochure defines eligible applicants during the charter enrollment period as "all members of The Medical Profession and their employees under age 70, who are actively engaged full-time in the duties of their profession or occupation" and states further that an applicant may include a spouse and dependent

children between 14 days and 23 years. The guarantee provision is repeated in the brochure as follows: "If you have ever been previously refused Life Insurance Protection due to past or present medical history or are otherwise uninsurable because of physical impairment this Guaranteed Coverage Provision applies to you." Applicants under age 60 are guaranteed coverage if actively engaged in the duties of their profession for 90 consecutive days before applying.

Mrs. Miller received an acknowledgment on August 2, 1969, from the Joseph K. Dennis Company informing her that the application had been submitted to the insurance company and would require approximately two weeks for processing. On August 21, 1969, the insurance company notified the Joseph K. Dennis Company that coverage was rejected for the husband and daughter for medical reasons and that a certificate should be issued for Mrs. Miller only. This certificate was issued for $20,000, effective October 1, 1969, and mailed to Mrs. Miller on September 10, 1969, with notice of the rejection of her husband and daughter and further notice that a premium was then due and payable to cover the insurance on her life. Mrs. Miller has never paid or offered to pay any premium.

Section 56-2419 of the Georgia Insurance Code (Ga. L. 1960, pp. 289, 667; *Code Ann.* § 56-2419) prescribes the basic rule for construing an insurance policy according to the entirety of the terms and conditions appearing in the policy, as amplified, extended, or modified by any rider, endorsement, or application made a part of the policy. In the present case there is no policy covering the life of the plaintiff's late husband, and even if we should assume that the solicitation constituted an offer, as the plaintiff urges, which the plaintiff accepted by submitting a completed application, we find nothing in the solicitation material that in any way constitutes an absolute and irrevocable offer to insure the spouse of the applicant. All reference to the "Special Guarantee Coverage Provision" in the literature clearly refers to an applicant in terms of a person eligible to apply for coverage, and the only persons eligible to apply were members of the medical profession and their employees. Moreover, a blank application form was included in the solicitation,

and if the solicitation constituted an offer, this form must be regarded as disclosing the conditions under which an applicant could accept the offer, and in completing and submitting the application the applicant necessarily agreed to the statement thereon, which has the effect of converting the application, as completed and submitted, to a counteroffer under which the insurance company would incur no liability until the company accepted the application while conditions affecting insurability were as described in the application and upon payment of the first premium. In respect to the spouse, the company never accepted the application, the conditions affecting his insurability as described in the application changed with his subsequent heart attack, and no premium was ever paid.

*Judgment affirmed. Quillian, J., concurs. Evans, J., concurs specially.*

ARGUED JANUARY 7, 1971—DECIDED JANUARY 28, 1971.

*R. Alex Crumbley, Weltner & Crumbley, Charles L. Weltner,* for appellant.

*Smith, Cohen, Ringel, Kohler, Martin & Lowe, Williston C. White, Malcolm H. Ringel,* for appellee.

EVANS, Judge, concurring specially. I reluctantly concur in the judgment affirming the trial court. I do this for the sole reason that the insurance company inserted in the application, which was signed by plaintiff, the language: "I understand that the Life Insurance Company of North America will incur no liability until this application is accepted by them while the conditions affecting insurability are as described above and the first premium is paid in full." This language is not emphasized in any manner, and appears as the second from the last paragraph preceding applicant's signature, whereas the last paragraph is capitalized and thus designed to gain more attention. Of course, the second from the last paragraph is the most important paragraph in the entire application and should have been emphasized more than any other paragraph therein.

The whole record shows a clever advertising and promotional venture, designed to make the applicant believe that applicant and his family were insured from the very moment the signed

application was received by the insurance company.

Following the signature and capitalized in black print is the language: "Send no money—Invoice will be mailed with certificate" which indicated that payment of money was not important, and that credit was being especially extended to the applicant.

The insurance company, in writing, solicited the application, and its letter stated: "The special enrollment period has been extended 30 days . . ." and ended with: "Please forward your enrollment form today for immediate processing," thus leading the applicant to believe that her signed application caused her to be "enrolled" (insured) at once.

The letter contained a paragraph which, in effect, instructed the applicant that there was hardly any way for the application not to be successfully processed, in this language: "If you have ever been previously refused Life Insurance Protection due to past medical history or are uninsurable because of physical impairments, this Guaranteed Coverage Provision applies to you. Applicants with below standard medical health records under age 60 *will be issued* the amount they apply for up to $20,000 (see enclosed brochure for details). There are no minimum number of applicants required to effect this Provision."

With such broad language and glowing promises how could anyone be turned down by the insurance company?

It is easy to see how the applicant honestly believed that she and her family were "enrolled" and insured in this case. Remedial action should be taken by the Commissioner of Insurance of the State of Georgia to prevent such misleading solicitations of insurance in the future.